UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNA JOHNSON,

Case No:     cv

    Plaintiff,

v.

ISIDORE IBEAWUCHI, an individual, and
GRACE POINT LLC, jointly and severally,

    Defendants.

                               /

MILLER COHEN, P.L.C.
Keith D. Flynn (P74192)
Yvonne E. Tirakian (P86598)
*Attorneys for Plaintiff*
7700 Second Ave., Suite 335
Detroit, MI  48202
(313) 964-4454
(313) 964-4490 Fax
kflynn@millercohen.com
ytirakian@millercohen.com

                               /

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, SHANNA JOHNSON, by and through her attorneys MILLER COHEN, P.L.C., and states as follows:

## **INTRODUCTION**

Plaintiff Shanna Johnson was a loyal and hard-working employee of Grace Point LLC from February of 2023 until June of 2025.  Plaintiff worked as a direct care worker in an adult foster care home, which is a difficult and often thankless job.

In her position as a direct care worker, Plaintiff cared for some of the most vulnerable people in our society.  Plaintiff should have been rewarded for her dedication.

Instead, Plaintiff was misclassified as an independent contractor so that Defendants could avoid paying her overtime for the long hours she worked. Plaintiff was punished by Defendants when she discussed her pay. Plaintiff was retaliated against for reporting a co-worker for physically assaulting a resident under her care. Despite being assigned a greater number of responsibilities and held to a higher standard than her younger immigrant co-workers, Plaintiff remained the lowest paid worker at Defendants' Kensington House. Since her termination, Plaintiff has not been able to find steady employment. Due to Defendants' actions, Plaintiff lost her job and is in danger of losing her home. Consequently, Plaintiff requests that she be made whole for the injuries caused by Defendants' actions and employment practices.

Defendants' actions violated the Fair Labor Standards Act, Michigan's Whistleblowers' Protection Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and Michigan's Elliott Larsen Civil Rights Act. Because Plaintiff has not yet exhausted administrative remedies, this Complaint does not include her claims under Title VII or the ADEA. Plaintiff's charge of age and national origin discrimination is pending before the Equal Employment Opportunity Commission ("EEOC"). Once she receives a Notice of

Dismissal and Right to Sue from the EEOC, Plaintiff will seek leave to file an Amended Complaint adding claims under Title VII and the ADEA.

## PARTIES

1.      Plaintiff, Shanna Johnson is an individual residing in the State of Michigan, County of Wayne.

2.      Defendant Isadore Ibeawuchi is an individual residing in the State of Michigan, County of Wayne.

3.      Defendant Grace Point, LLC is a corporate entity doing business in the State of Michigan, County of Wayne.

4.      At all times relevant, Defendant Ibeawuchi used Defendant Grace Point, LLC as her alter-ego.

5.      Defendant Ibeawuchi was the sole owner, operator, and shareholder of Defendant Grace Point, LLC.

## JURISDICTION AND VENUE

6.      This Court has general federal question jurisdiction pursuant to 28 U.S.C. §1331, because Plaintiff brings her claims pursuant to the Fair Labor Standards Act, 29 U.S.C §201, *et seq.*

7.      The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367. The pendant claims are part of the same case or

controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

8.      Venue is proper in this Court because the majority of the events giving rise to this Complaint occurred in the Eastern District of Michigan, Defendants obligated themselves to Plaintiff within Michigan, Defendant Grace Point LLC's registered address is located within the Eastern District of Michigan, and both Plaintiff and Defendant Ibeawuchi reside within the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

9.      Defendant Grace Point LLC operates several Adult Foster Care Homes for adults with developmental disabilities, mental illnesses, traumatic brain injuries, or physical disabilities.

10.     Plaintiff started working for Defendant Grace Point LLC as a direct care worker in the Kensington Home location in the City of Taylor, County of Wayne, State of Michigan on or about February of 2023.

11.     As a direct care worker, Plaintiff rendered caretaking services to both aged and disabled adults ("Residents") living in Defendants' Kensington House.

12.     Plaintiff's job duties included, but were in no way limited to:

    a.   Bathing, clothing, feeding, toileting, changing diapers or colostomy bags for Residents as necessary;

b. Assisting Residents in all aspects of their daily lives, including lifting non-ambulatory Residents in and out of bed or repositioning them to prevent bed sores;

c. Preparing meals for Residents, cleaning all areas of the House, and laundering Residents' clothing and bedding;

d. Ensuring that Residents follow medication and treatment plans prescribed by their healthcare providers;

e. Monitoring Residents at night while they are sleeping, and

f. Summoning medical attention when necessary.

13.    On average, Plaintiff worked upwards of 50 hours per week while employed by Defendants.

14.    On average, Plaintiff worked upwards of 170 hours per biweekly pay period while employed by Defendants.

15.    Defendants refused to pay Plaintiff overtime pay, even though she regularly worked in excess of 40 hours each week.

16.    Whenever Plaintiff asked to be paid overtime or provided the benefits that employees traditionally receive from their employers, Defendants told Plaintiff that she was a "private contractor."

17.    Defendants misclassified Plaintiff as an independent contractor instead of an employee.

18.     Yet, while Plaintiff worked for Defendants, the Defendants controlled what work she performed and how she performed it.

19.     Defendants dictated Plaintiff's schedule and hours of work.

20.     Defendants controlled all financial aspects of Plaintiff's job.

21.     Upon information and belief, all of Defendants' employees are misclassified as independent contractors.

22.     In August of 2024, Plaintiff made a report to Detroit Wayne Integrated Health Network-Office of Recipient Rights because she saw another direct care worker asleep on the job.

23.     The co-worker she reported, Winifred, was the sister of Defendant Ibeawuchi.

24.     Defendants instructed Plaintiff not to make further external complaints to the Office of Recipient Rights ("ORR").

25.     In March of 2025, Defendants increased the hourly wage for nearly all their employees by $3.00 per hour.

26.     Upon knowledge and belief, Plaintiff is the only employee for Defendants who did not receive a $3.00 per hour raise.

27.     Instead, Plaintiff received a raise of only $1.00 per hour.

28.     Defendant Ibeawuchi is an immigrant from an African nation.

29.     Defendant Ibeawuchi indicated on numerous occasions that she "takes care of her people," meaning she prefers to employ immigrants who are also from African countries.

30.     Consequently, the majority of the workers staffing Defendants' several adult foster care homes are immigrants from African countries.

31.     Despite being African American herself, Plaintiff is not the kind of "African" that Defendants prefer.

32.      While most, if not all, of Defendants' employees were black, Defendant was still in the minority of employees as an African American because she is native to the United States as opposed to an African country.

33.     Plaintiff was also the oldest employee at Kensington House, a fact that she could not forget because Defendant Ibeawuchi constantly reminded Plaintiff.

34.     Defendant Ibeawuchi regularly stated or implied that she held Plaintiff to a higher standard than other employees because of her age.

35.     Plaintiff was penalized for the mistakes and misconduct of other employees.

36.     For example, on one occasion sometime in 2024, another employee arrived over two hours late to relieve Plaintiff at the end of her shift.

37.     Plaintiff could not leave the residents unattended and therefore worked over two hours beyond her originally scheduled shift.

38.     Defendant Ibeawuchi did not pay Plaintiff for the additional time worked.

39.     Instead, Defendant Ibeawuchi paid the tardy employee – a younger immigrant from an African nation - for the hours Plaintiff worked.

40.     When Plaintiff asked for her pay to be corrected, Defendant Ibeawuchi told her to "take it up with [the other employee]."

41.     On another occasion on March 27, 2025, at around 1:00 pm, Defendants' employees attended a "House Meeting."

42.     The attendees at the March 27 House Meeting were Plaintiff, the other staff at Kensington House, and Defendant Ibeawuchi.

43.     In that meeting, Defendant Ibeawuchi provided Plaintiff and her colleagues with updates and reminders about Defendants' workplace policies and procedures.

44.     In particular, Defendant Ibeawuchi instructed all employees to follow Defendants' policy of not immediately reporting suspected Recipient Rights violations to external ORRs.

45.     Instead, the employees were told, "anything we have to report goes to the House Manager, the House Manager sends it to the office, and the office decides whether or not they want to approve it and send it to [ORR]"

46.     Plaintiff felt that Defendant Ibeawuchi's admonition was directed at her, since, to her knowledge, she was the only employee in the meeting who had previously made an external report to ORR, and Defendant Ibeawuchi had previously expressed her dissatisfaction with her for doing so.

47.     During the March 27 meeting, Plaintiff worked up the courage to inquire about Michigan's recently approved wage increase for direct care workers.

48.     Defendant Ibeawuchi responded that all employees are private contractors and therefore not entitled to the wage increase.

49.     Plaintiff asked why Defendants treated the staff like employees until it came time to pay them as employees and afford them the benefits other employees are supposed to receive.

50.     Plaintiff also raised the issue of the increasingly unequal distribution of job duties and responsibilities.

51.     Plaintiff said she felt that other employees left their work for her to do, and if she did not do it, she would be blamed.

52.     Several employees became outraged and accused Plaintiff of lying at the meeting.

53.     Another employee named Josh[1] became especially angry with Plaintiff and shouted at her in her face.

54.     Plaintiff remained calm and decided to step away from the meeting to diffuse the situation, but this made Josh angrier.

55.      Josh tried to physically attack Plaintiff after she had already turned her back and started walking away from them.

56.      After Plaintiff's coworkers managed to restrain Josh, Defendant Ibeawuchi looked directly at Plaintiff and said: "You have disrespected me, and you have disrespected my meeting. Get out."

57.     Plaintiff was then ordered to leave the meeting and instructed that she could not return to Kensington House until she met with Defendant Ibeawuchi and apologized.

58.      Yet, Defendants did not impose this requirement on Josh, even though he had instigated and incited violence against Plaintiff.

59.     Plaintiff wanted to be a good employee, and she cared about her job, so she swallowed her pride and complied with Defendants' requirement by attending a meeting with Defendant Ibeawuchi at 3:00 pm that same day.

---

[1] Josh's last name is unknown at this time but will be learned through the course of discovery in this matter.

60.     During their meeting, Defendant Ibeawuchi told Plaintiff that she "expected more from her" as the "oldest," implying that Plaintiff was accountable for Josh's behavior during the meeting.

61.     Plaintiff stated that she felt it was unfair to be held responsible for everyone in the home just because she was the oldest.

62.      Defendant Ibeawuchi responded by saying that, in her lifetime, she had done things she didn't want to do, stating "it's called pulling up your big girl panties and doing what you have to do."

63.     Plaintiff tried her hardest to keep to herself, which she managed to do until May 22, 2025, when she witnessed a co-worker (Kingsley Awakwe) strike a Resident.

64.     The Resident in question is non-verbal and occasionally touches themself.

65.     When the Resident touches themself, the normal course of action for the employees is to tell the Resident, 'No,' or to direct the Resident to their bedroom where they can have privacy.

66.     On May 22, 2025, however, Plaintiff heard Awakwe say to the Resident, "Get your hands out of your pants."

67.     When Plaintiff turned around, she saw Awakwe hit the Resident on the hand.

68.     Plaintiff reported the incident to her supervisor (Elgienique Teate) and said that she believed it ought to be reported to ORR.

69.     Of course, Defendants' policy stated that the incident would not be reported to ORR.

70.     Plaintiff felt that she had a duty to report the abuse, but she feared that she would lose her job if she did so.

71.     On May 23, 2025 (the next immediate business day), Plaintiff decided that she would rather risk being fired than live knowing that she was part of Defendants' cover-up of Awakwe's abuse.

72.     So, on May 23, Plaintiff reported the behavior to the ORR for Detroit and Wayne County.

73.     The very next day, Plaintiff received a written warning for being tardy after dropping her kids off before work, despite the fact that Defendants allowed Plaintiff's coworkers to show up late or call off entirely without penalty.

74.     On June 2, 2025, an investigator from DWIHN-ORR (Phoenicia Jackson) visited the Kensington House to officially open the ORR investigation.

75.     On June 3, 2025, Plaintiff was taken off the work schedule and suspended without pay pending the investigation.

76.     On June 20, 2025, Plaintiff was fired ostensibly because of her attendance and conduct.

77.     Plaintiff's termination letter said that she had been tardy and disturbed her manager too many times.

78.     In reality, Defendants terminated Plaintiff for speaking out about workplace abuse, complaining about her wages, and opposing discrimination on the basis of age and national origin.

## COUNT I

### MISCLASSIFICATION AND FAILURE TO PAY OVERTIME
### FAIR LABOR STANDARDS ACT OF 1938, 29 U.S.C. § 201, et seq.

79.  Plaintiff incorporates by reference all preceding paragraphs.

80.  At all times relevant to this action, Plaintiff was an employee of Defendants within the meaning of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §201, *et seq.*

81.     At all times relevant to this action, Defendants were the employers of Plaintiff within the meaning of the FLSA 29 U.S.C. §201, *et seq.*

82.     At all times relevant to this action, Defendants were engaged in the operation of "an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution" within the meaning of the FLSA 29 U.S.C. §203(s)(1)(B).

83.     Plaintiff regularly worked at least fifty (50) hours a week but was never paid properly for her additional hours.

84.     Defendants knowingly, intentionally, and willfully failed to compensate Plaintiff for hours worked over forty hours per week at a rate of one-and-a-half times her regular rate, in violation of the FLSA 29 U.S.C. §207(a)(1).

WHEREFORE Plaintiff requests that this Honorable Court grant the following remedies:

A. Declare that Defendants' practices and actions constitute unlawful employment practices in violation of the FLSA;

B.  Award Plaintiff back pay for the difference between the hourly wage paid for every hour beyond 40 worked in a week and the time-and-a-half that was earned;

C.  Award Plaintiff liquidated and multiple damages as allowed by law, including double damages under the FLSA;

D.  Award Plaintiff compensatory damages and punitive damages;

E.  Award Plaintiff post-judgment assignment of attorneys' fees, costs, and interests;

F.  Award Plaintiff equitable relief as this Court deems just and appropriate;

G. Award Plaintiff any other relief as this Court deems just and proper.

COUNT II
RETALIATION
FAIR LABOR STANDARDS ACT OF 1938, 29 U.S.C. § 201, et seq.

85.    Plaintiff incorporates by reference all preceding paragraphs.

86.    Section 215(a)(3) of the FLSA provides that "[i]t shall be unlawful for any person…to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act…" 29 U.S.C. §215(a)(3)

87.    Plaintiff engaged in protected activity by asserting her rights under the FLSA in the March 27, 2025, meeting, when she asked why the workers were treated like employees until it came time to pay them as employees and afford them the other benefits that employees get.

88.    Defendants knew about Plaintiff's complaints against violations of the FLSA because she made her complaints directly to Defendants.

89.    Defendants suspended Plaintiff without pay and then terminated her because of her actions seeking to enforce her rights under the FLSA.

90.    As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has lost benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.  Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

B.  Award Plaintiff compensatory damages and punitive damages;

C.  Award Plaintiff post-judgment assignment of attorneys' fees, costs, and interests;

D.  Award Plaintiff equitable relief as this Court deems just and appropriate;

E.  Award Plaintiff any other relief as this Court deems just and proper.

## COUNT III
## RETALIATION
## MICHIGAN WHISTLEBLOWERS' PROTECTION ACT, M.C.L. § 15.361, et seq. ("WPA")

91.    Plaintiff incorporates by reference all preceding paragraphs.

92.    Plaintiff was an "employee" within the definition of the Michigan Whistleblower Protection Act ("WPA"), MCL §15.361(a) as a person who performed services in exchange for wages and other renumeration under contract for hire.

93.     Defendant Grace Point constitutes Plaintiff's "employer" within the definition of the WPA, MCL §15.361(b), as Defendant employs one or more employees.

94.     Plaintiff's complaints to DWIHN-ORR were actual reports of suspected violations of State and/or Federal regulations under its jurisdiction.

95.     DWIHN-ORR is considered a "public body" within the definition of the WPA. MCL §15.361(d)(v). It is a "law enforcement agency" with the ability to investigate and prosecute violations of federal laws and regulations under its jurisdiction.

96. DWIHN was created by Wayne County and the City of Detroit.

97. More than half of DWIHN's funding comes from the State of Michigan.

98. DWIHN also receives significant funding from Wayne County.

99.     Plaintiff's complaints to DWIHN-ORR were protected activity within the meaning of the WPA, MCL §15.361 *et seq* because she reported suspected illegal activity to a public body.

100.     In violation of the WPA, MCL §15.362, Defendants suspended Plaintiff without pay for her protected activity and then terminated her for her protected activity.

101.     Defendants were aware of Plaintiff's protected activity and terminated her for a pre-textual reason after learning of her reports.

102.     As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has lost benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.     Declare Defendants' actions were a violation of WPA.

B.     Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.     Award Plaintiff compensatory damages and punitive damages;

D.     Award Plaintiff post-judgment assignment of attorneys' fees, costs, and interests;

E.      Award Plaintiff equitable relief as this Court deems just and appropriate;

F.      Award Plaintiff any other relief as this Court deems just and proper.

COUNT IV
AGE DISCRIMINATION
MICHIGAN ELLIOTT LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101, et seq.
("ELCRA")

103.    Plaintiff incorporates by reference all preceding paragraphs.

104.    Defendant Grace Point constitutes Plaintiff's "employer" within the meaning of the Elliot Larsen Civil Rights Act (ELCRA) as it has one or more employees. MCL §37.2021(a).

105.    Plaintiff is 44 years old.

106.    Defendants assigned Plaintiff more job duties for less pay than her younger co-workers.

107.    Defendants regularly informed Plaintiff that the reason she had more job responsibilities was her status as the "elder" of the house.

108.    Defendants intentionally discriminated against Plaintiff in violation of ELCRA by assigning her more work for less pay than her younger co-workers solely because of her age.

109.    Defendants' discriminatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from age discrimination.

110.    As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has lost benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering

and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A. Declare that Defendants' practices and actions constitute unlawful employment practices in violation of ELCRA;

B. Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C. Award Plaintiff compensatory damages and punitive damages;

D. Award Plaintiff post-judgment assignment of attorneys' fees, costs, and interests;

E. Award Plaintiff equitable relief as this Court deems just and appropriate;

F. Award Plaintiff any other relief as this Court deems just and proper.

## COUNT V
## NATIONAL ORIGIN DISCRIMINATION
## MICHIGAN ELLIOTT LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101, et seq.
## ("ELCRA")

111. Plaintiff incorporates by reference all preceding paragraphs.

112.    Defendant Grace Point constitutes Plaintiff's "employer" within the meaning of the Elliot Larsen Civil Rights Act (ELCRA) as it has one or more employees. MCL §37.2021(a).

113.    Plaintiff is a natural born citizen of the United States.

114.    Defendants have practices that favor employees who are immigrants from African nations.

115.    Defendants' discriminatory conduct exhibited a willful and/or reckless indifference to Plaintiff's protected right to be free from discrimination based on national origin.

116.    As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has lost benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at the trial of this action.

WHEREFORE, Plaintiff requests that this Honorable Court grant the following remedies:

A.    Declare that Defendants' practices and actions constitute unlawful employment practices in violation of ELCRA;

B.    Award Plaintiff all lost wages, seniority, and benefits, past and future, emotional distress, mental anguish, humiliation, outrage,

embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity to which she is entitled;

C.     Award Plaintiff compensatory damages and punitive damages;

D.      Award Plaintiff post-judgment assignment of attorneys' fees, costs, and interests;

E.     Award Plaintiff equitable relief as this Court deems just and appropriate;

F.     Award Plaintiff any other relief as this Court deems just and proper.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By: */s/ Yvonne E. Tirakian*
Keith D. Flynn (P74192)
Yvonne E. Tirakian (P86598)
*Attorneys for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, MI  48202
(313) 964-4454 Phone
(313) 964-4490 Fax
kflynn@millercohen.com
Date:  September 2, 2025                     ytirakian@millercohen.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNA JOHNSON,

Case No:

Plaintiff

v.

ISIDORE IBEAWUCHI, an individual, and
GRACE POINT LLC, jointly and severally,

Defendants.

_____/

MILLER COHEN, P.L.C.
Keith D. Flynn (P74192)
Yvonne E. Tirakian (P86598)
*Attorneys for Plaintiff*
7700 Second Ave., Suite 335
Detroit, MI  48202
(313) 964-4454
(313) 964-4490 Fax
kflynn@millercohen.com
ytirakian@millercohen.com

_____/

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

[SIGNATURES NEXT PAGE]

Respectfully submitted,

**MILLER COHEN, P.L.C.**


By:  */s/ Yvonne E. Tirakian*
Keith D. Flynn (P74192)
Yvonne E. Tirakian (P86598)
*Attorneys for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, MI  48202
(313) 964-4454 Phone
(313) 964-4490 Fax
kflynn@millercohen.com
Date:  September 2, 2025          ytirakian@millercohen.com